[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband, 43, and the defendant wife, 43, married each other on September 28, 1974 in Great Neck, New York. The plaintiff resided continuously in Connecticut for over a year prior to bringing this action for dissolution on the ground of irretrievable breakdown by complaint dated February 2, 1994. No child has been born to the defendant since the date of the marriage. CT Page 7667
Both parties are in reasonably good health. Both are well educated and each was able to do post graduate work during the marriage. They were both finishing college when married. The plaintiff obtained a sales position with National Starch shortly after the marriage and was shortly thereafter transferred to Buffalo, New York. The defendant, who was then employed by New York Telephone, was unable to obtain a transfer to the Buffalo area. The parties agreed that the defendant would return to S.U.N.Y. at Buffalo for an M.B.A., which she undertook to do in January 1979. The plaintiff had a company car which he used in covering his territory. The parties owned no personal car. The defendant took two buses to and from school. The defendant inherited $10,000.00 from her grandmother in 1980 which enabled her to buy an automobile. Her parents paid her tuition costs. The defendant was awarded her M.B.A. degree in January, 1981.
In the spring of 1981 the plaintiff was terminated by his employer. He was able to find similar employment with Avery Co. as a salesman, covering Connecticut and Massachusetts. Shortly thereafter the parties moved to Meridan, Connecticut in order to allow the plaintiff to cover the Connecticut and Massachusetts territory. After a short stay the parties moved to Norwalk, Connecticut. The defendant was hired by the Gartner Group located in Stamford for a starting salary of $28,000.00. In addition, the company provided both health and life insurance as well as a company funded pension.
In order to enable the parties to purchase a house in Norwalk for $88,500.00 the defendant's parents gave between $40,000.00 and $45,000.00 to the parties. At that time the plaintiff was unemployed. The Norwalk home was sold and the present home in Ridgefield at 25 Rolling Ridge Road was purchased. The parties stipulated at trial that it has a fair market value of $265,000.00, a mortgage balance of $200,000.00 and equity of $65,000.00.
The defendant's career at Gartner prospered. She was loaned $1,000.00 in 1982 by the company to enable her to purchase 1,000 shares of the company's stock while it was still privately owned.
The plaintiff was no longer employed by Avery for he left to attend a serious alcoholic addiction. The plaintiff drank heavily from the inception of the marriage. He often remained in bars four or five nights weekly drinking to excess. In the spring of CT Page 7668 1979 he was arrested for driving under the influence. The defendant's parents paid an attorney $1,800.00 to defend him. In the fall of 1982 the plaintiff was again arrested for D.W.I. The plaintiff then began attending Alcoholic Anonymous meetings. Although he didn't stop drinking, he did befriend a woman at the AA meetings leading to being found in bed with her.
The plaintiff had his last drink of alcoholic beverage on April 3, 1986. The plaintiff resumed with A.A. meetings, sometimes twice daily. The parties had agreed that the plaintiff should make a career change removing himself from outside sales in order to avoid the entertaining, including drinking, attendant to the occupation. He began a full time program at Fairfield University from which he graduated in 1987. The plaintiff became a teacher. During the 1987-1988 school year he was able to attend University of Bridgeport, having received a stipend, while working for Norwalk. After completion of these courses, the plaintiff was employed at Pratt Technical High School and then at Abbott Tech. However, when offered an assignment in Bridgeport, he refused and left the state system at the end of 1990. He worked as a substitute in the N.Y.C. school system at various schools in the Bronx, leaving teaching in October, 1993. Since the beginning of 1995 the plaintiff has been working with his brother in starting a new business.
By his own admission, the plaintiff has never earned more than $30,000.00 in any one year. Again, by his own admission, the defendant was very supportive of his efforts to stop drinking and of his career changes.
In October 1986 the defendant's employer undertook an initial public offering of its stock splitting the shares 2.5 for 1 at the same time. In July, 1988 the defendant's company was acquired by Saachi Saachi for $22.50 per share. The defendant paid the capital gains tax, paid off the parties' debts and left what remained in their checking account. In 1990 the Gartner Group was taken private in a leveraged buy-out. In the fall of 1991 the defendant was offered 4,050 shares of common stock and 7 shares of preferred for $9,000.00 which the defendant accepted, raising the necessary money by borrowing from her pension. The preferred was redeemed in the following year which enabled the defendant to pay back the $9,000.00 to the pension. The common was designed to vest over 5 years at 20% each year.
In October 1993, the Gartner Group again went public, CT Page 7669 splitting the stock 2 for 1 at the same time. In August 1994 the shares split 2 for 1 again.[1]
The defendant is presently a Director of Industry Service earning a base annual salary of $87,810.00. In 1984 she received bonus of $21,000.00 at year end. Last year she was granted options on 10,000 shares to vest in the future. They have no present value. For the final phase of the parties marriage, the defendant supported their life style. In considering the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates, the court finds that much of the appreciation was and is passive due to market forces and not dependent on any decisions of the parties.
By the fall of 1993 the plaintiff was conducting an adulterous affair with Frances Leonard. The plaintiff by this time was away from the marital home the majority of his time.
The final separation occurred on January 17, 1994 when the plaintiff left the marital home for the final time, moving into Frances Leonard's apartment.
The plaintiff testified that the marriage was breaking down by 1990 due to a failure of communication, cessation of sexual relations, defendant's weight gain and her withdrawal and isolation. The plaintiff further testified that the marriage was still viable in 1986 after he stopped drinking.
The court agrees that the plaintiff's alcoholism is not the cause of the marriage breakdown. The first attempt to recover from alcoholism and the 1986 ongoing recovery led to two early affairs with other women and a final liaison of some duration thereby being causes for the breakdown.
Since 1986 the plaintiff's life has centered around A.A., a sphere the defendant does not share. Since 1986 the plaintiff has had to concentrate on staying sober one day at a time. This sobriety is apparently more effectively achieved in the arms of women other than his wife. She forgave his two earlier lapses while he was still in an alcoholic haze, but his most recent affair can only be characterized as an affair of the heart.
Therefore, the court finds that the parties marriage was irretrievably broken down before the fall of 1993. CT Page 7670
The credibility of the parties is critical in assisting the court in finding the facts. The plaintiff was vague, rambling and even evasive at times. The defendant was clear, straightforward and believable. For example, the plaintiff expressed complaints regarding the defendant's weight. She weighed 155 pounds when he married her. Her weight at trial was 175 pounds. The court finds these complaints to be a red herring dragged across the testimony in an effort to bolster the plaintiff's case.
What is important is that the growth in value of the defendant's stock holdings, passive in nature, occurred after the irretrievable breakdown of the marriage. The case of Pappageorgev. Pappageorge, 12 Conn. App. 596 observed that in that case the bulk of the plaintiff husband's property was acquired after the separation and that division based on property held upon separation was permitted. As instructed by the case of Zern v.Zern, 15 Conn. App. 292, this court is not using valuations as of the separation date.
The defendant applied her stock sale to the reduction of the parties' bills. The plaintiff has not contributed to the acquisition of any of the parties' assets. To claim that he urged the defendant to make the $9,000.00 investment in Gartner stock and thereby should share in the increase of post-separation value is ludicrous. He has no financial credentials nor is there any credible evidence that the defendant sought or relied on any such advice from the plaintiff. She merely told him of her employer's offer.
Having reviewed the evidenced in the light of the statutory criteria, the court enters the following judgment.
1. A decree is entered on the complaint dissolving the marriage on the ground of irretrievable breakdown. The counterclaim is dismissed as now moot.
2. No periodic alimony is awarded.
3. The plaintiff's interest in 22 Rolling Ridge Road, Ridgefield, Connecticut is awarded to the defendant who shall assume the mortgage balance. If a deed is not forthcoming from the plaintiff in thirty days, the transfer shall be effected pursuant to statute made and provided. CT Page 7671
4. The defendant is awarded the contents of the said marital home.
5. The defendant is ordered to transfer to the plaintiff 2,592 shares of Gartner Group stock, as they existed on March 22, 1995 when the evidence concluded.
6. The defendant shall transfer one-half of her 401(k) plan of $11,933.00 and one-half of the defendant's pension of $100,900.00 by non-taxable transfers. The court will sign any QDRO required and approved by the administrator.
7. The defendant shall make a lump sum payment of $30,000.00 to the plaintiff on or before December 31, 1995.
8. The $15,000.00 escrow account is ordered paid one-half to each party.
9. Each party shall retain any remaining assets as now owned.
10. Each party shall pay their respective debts. Counsel for the defendant is directed to prepare the judgment file and the quit-claim deed.
Harrigan, J.